IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| GUSTAVO MARTINEZ, | Hon. Anne E. Thompson, U.S.D.J. |
|---|---|
| Plaintiff, | Civil Action No.: 3:20-cv-08710-AET-DEA |
| v. | |
| CITY OF ASBURY PARK, MONMOUTH COUNTY, BOROUGH OF BELMAR, AMIR BERCOVICZ, and JOHN DOE OFFICERS 1-14, | |
| Defendants. | |

---

**BRIEF OF DEFENDANT MONMOUTH COUNTY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) FOR FAILURE TO STATE A CLAIM**

---

Robyn B. Gigl, Esq. (01358-1977)
Fay Szakal, Esq. (11433-2014)
GluckWalrath LLP
4 Paragon Way
Suite 400
Freehold, New Jersey 07728
(732) 530-8822 (Phone)
(732) 530-6770 (Facsimile)
rgigl@glucklaw.com (email)
fszakal@glucklaw.com (email)
Special Counsel for Defendant
Monmouth County

Of Counsel & On the Brief:
Robyn B. Gigl, Esq. (01358-1977)
Fay Szakal, Esq. (11433-2014)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................... ii

PRELIMINARY STATEMENT ......................................... 1

STATEMENT OF FACTS ............................................ 2

LEGAL ARGUMENT ............................................... 10

POINT I

PLAINTIFF'S COMPLAINT FAILS TO MEET THE PLEADING REQUIREMENTS OF FED. R. CIV. P. 8 WITH REGARD TO DEFENDANT MONMOUTH COUNTY, AND THEREFORE MUST BE DISMISSED AS TO MONMOUTH COUNTY PURSUANT TO FED. R. CIV. P. 12(b)(6) ......... 10

    A. Plaintiff's Complaint Lumps All of the Defendants Together and Does Not Specify What Monmouth County is Alleged to Have Done Wrong........................ 10

    B. Plaintiff's Complaint Fails to Provide Notice to Monmouth County as to What Wrongdoing it Engaged In.... 12

POINT II

EVEN IF THE COURT FINDS PLAINTIFF'S COMPLAINT SUFFICIENT UNDER FED. R. CIV. P. 8, PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983 FAIL TO STATE A CLAIM ................................. 20

POINT III

PLAINTIFF FAILS TO STATE A CAUSE OF ACTION UPON WHICH RELIEF CAN BE GRANTED UNDER STATE LAW BECAUSE THE MONMOUTH COUNTY SHERIFF'S OFFICERS ACTED SPECIFICALLY IN ACCORDANCE WITH STATE LAW GOVERNING THEIR CONDUCT ...................... 24

CONCLUSION ................................................... 29

## TABLE OF AUTHORITIES

### Cases

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ....................passim

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ..........passim

Belmont v. MB Inv. Partners, Inc., 708 F.3d 470 (3d Cir. 2012) ....................................................10

Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2012) .................8

Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397 (1997) ...............................................7

City of Canton, Ohio v. Harris, 489 U.S. 378 (1989) .......20-22

Fowler v. UPMS Shadyside, 578 F.3d 203 (3d Cir. 2009) ..........9

Galicki v. New Jersey, 2015 WL 3970297 (D.N.J. June 29, 2015) ....................................................11

Gibson v. Inacio, 2010 WL 3943684 (D.N.J. October 5, 2010) ....26

Gregoire v. Biddle, 177 F.2d 579 (C.A.2 1949) ................17

In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410 (3d Cir. 1997) ............................................11,12

McMillian v. Monroe County, Ala., 520 U.S. 781 (1997) .........7

Monell v. New York City Dept. of Soc. Services, 436 U.S. 658 (1978) ...............................................20,22

Nieves v. Bartlett, ___ U.S. ___, 139 S. Ct. 1715 (2019) ......17

Ranko v. Saudino, 15-8483 (ES), 2016 WL 1529835 (D.N.J. Apr. 15, 2016) ...............................................9

State v. Hughes, 230 N.J. Super. 223 (App. Div. 1989) ......26,27

State v. Kelly, 84 N.J.L. 1 (1913) ....................24-26,28

State v. Lashinsky, 81 N.J. 1 (1979) ....................18,27

## FEDERAL RULES

Fed. R. Civ. P. 8 .......................................passim

Fed. R. Civ. P. 8(a)(2) .....................................14

Fed R. Civ. P. 12(b)(6) ..................................passim

## STATUTES

42 U.S.C. § 1983 ..........................................7,20

N.J.S.A. 2C:33-1(b) ..........................................5

N.J.S.A. 10:6-2 ..............................................7

N.J.S.A. 30:8-1 .........................................passim

## PRELIMINARY STATEMENT

In his Complaint, Plaintiff Gustavo Martinez, a reporter for the Asbury Park Press, describes, in vivid prose, police actions he experienced in the hours after the June 1, 2020 Black Lives Matter protest in Asbury Park, New Jersey. Although written in a style more befitting a memoir or historical rendering of the protests, the Complaint, no matter how engrossing, suffers from an inherent flaw — it does not state a cause of action against Monmouth County, which had nothing to do with the alleged assault and any alleged infringements on his constitutional rights.

Plaintiff does not make a single specific allegation of assault or deprivation of rights against Monmouth County and its employees. The only paragraph which discusses the minimal involvement of the Monmouth County Sheriff's Office in Plaintiff's experience on June 1, states that Plaintiff had already been arrested by an officer of another jurisdiction by the time he engaged with a Sheriff's Officer. Nevertheless, Plaintiff alleges that Monmouth County failed to properly train and supervise its employees – who did not cause his arrest, did nothing to violate his civil and constitutional rights, and took only those actions which they were statutorily mandated to take. Thus, Plaintiff's pleading is both legally deficient under the Federal Rules of Civil Procedure and fails to state a legally

1

cognizable claim against Monmouth County. As a result, Mr. Martinez' Complaint as to Monmouth County must be dismissed with prejudice.

Most importantly, Plaintiff's claims disregard that the actions of the Monmouth County Sheriff's Officers with regard to Plaintiff were consistent with, and mandated by, New Jersey law governing such actions. As such, Plaintiff's claims fail as a matter of law.

Therefore, Defendant Monmouth County by way of this motion moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## STATEMENT OF FACTS

The Complaint arises out of the June 1, 2020 Black Lives Matter protest that occurred in the City of Asbury Park, New Jersey, which event Plaintiff Gustavo Martinez ("Plaintiff") attended as a member of the media. (Compl.[1], ¶¶ 1-2). The City of Asbury Park ("Asbury Park") acknowledged that the protest was intended to be peaceful, and that "peaceful assemblies are the lifeblood of our democracy." (Compl., Exh. A). In the interest of protecting the "safety of the organizers and attendees of the peaceful demonstration," Asbury Park issued a Proclamation of State of Emergency enacting a temporary curfew to be in effect

---

[1]   "Compl." shall hereinafter refer to Plaintiff's Complaint filed on July 13, 2020, which is ECF 1 on the docket.

from 8:00 p.m. on June 1, 2020 through 5:00 a.m. the following

morning. (Id.) The Proclamation specified, in pertinent part:

> During the hours of curfew, all persons are prohibited
> from using, standing, sitting, travelling or being
> present on any public street or in any public place,
> including for the purpose of travel, with the
> following exemptions: . . . [a]ll law enforcement,
> firefighters, paramedics or other medical personnel,
> as well as any other emergency response personnel
> authorized by the State of New Jersey, and
> credentialed members of the media.

(Id. (emphasis added)).

After the curfew went into effect at 8:00 p.m., Asbury Park

police engaged in activity to clear the protesters and prevent

civil unrest. (Compl., ¶ 3). Shortly after 10:00 p.m., the

situation involving Plaintiff occurred. (Compl., Exh. D, p. 5; ¶

30). Plaintiff alleges that during this police intervention and

in the course of his filming and broadcasting of the aftermath

of the protest, he was assaulted by police officers, unlawfully

arrested, detained, and deprived of his civil and constitutional

rights as a member of the press[2] as a result of same. (Compl., ¶¶

1-4, 25). Video footage appended to Plaintiff's pleading as well

as the subsequent police report confirm that Asbury Park police

---

[2] This motion is brought pursuant to Fed. R. Civ. P. 12(b)(6). Only
facts alleged in the Complaint, and contained in exhibits attached
thereto, are properly before the Court at this juncture. Extended
recitation of the facts and contents of these exhibits is duplicative
of the Complaint and not necessary at this time.

3

officers conducted Plaintiff's arrest. (Compl., Exh. D, pp. 1-2, 6, 8-9; ¶¶ 28-29).

According to the Complaint, the arresting officers brought Plaintiff to a Monmouth County Sheriff's Office van for transportation to the police headquarters in the Borough of Belmar. (Compl., ¶¶ 26-27). This section of the Complaint includes the only events of the evening that involved Defendant Monmouth County, which states, in pertinent part:

> 26.   The arresting officers handed Mr. Martinez to another officer, who took him to a van that read "Monmouth County Sheriff." The van was surrounded by a group of officers wearing jackets emblazoned with the word "Sheriff." One of those officers noticed Mr. Martinez's press badges and inquired about them. Mr. Martinez identified himself as a reporter, now for the second time following his arrest. Mr. Martinez was nevertheless stripped of his protective gear and loaded into the van. As the officer sat him down in the van and slammed the door shut, Mr. Martinez's press badges still dangled around his neck.

> 27.   Mr. Martinez was driven to the nearby town of Belmar, along with other individuals arrested at the protest. He was unloaded at the Belmar police station along with the other arrestees. . . .

(Compl. ¶¶ 26-27; and see generally Compl.).

Approximately five (5) hours after his arrest, Plaintiff was provided with a summons and complaint from the Asbury Park Police and released from the Belmar police station. (Compl., ¶ 30). The Criminal Summons stated that Plaintiff "within the jurisdiction of [Asbury Park Municipal Court], knowingly, purposely fail [sic] to obey an order to disperse" in violation

4

of N.J.S.A. "2C:33-1B." (Compl., Exh. C). Lieutenant Bercovicz signed the Criminal Summons. (Id.) This charge is not, in fact, a violation of the curfew promulgated in Asbury Park's Proclamation of State of Emergency, nor of any other local curfew ordinance. Rather, N.J.S.A. 2C:33-1(b) is the criminal code addressing "Riot" and specifically "[f]ailure of disorderly persons to disperse upon official order." It reads

> Where five or more persons are participating in a course of disorderly conduct . . . likely to cause substantial harm, a peace officer or other public servant engaged in executing or enforcing the law may order the participants and others in the immediate vicinity to disperse. A person who refuses or knowingly fails to obey such an order commits a disorderly persons offense.

[N.J.S.A. 2C:33-1(b).]

The Investigation by the Monmouth County Prosecutor's Office (the "MCPO") revealed that Asbury Park police believed Plaintiff was amongst the rioters and resistors to the order to disperse, and were unable to discern he was a member of the media due to obscured press credentials. (Compl., ¶ 34). The MCPO's enclosure letter addressed to Plaintiff and containing the Investigative Report notes that the Asbury Park police involved in the arrest believed that Plaintiff was a protestor disobeying curfew and orders to disperse for over two (2) hours and that this belief was predicated on "the brevity of their interaction with you . . . , your dark clothing, poor lighting

in the area, your positioning alongside of protesters, and the absence of clearly identifiable press credentials, which the video footage reveals to have been backwards throughout the night." (Compl., Exh. D, p. 3). Plaintiff's apparel was distinguished from other members of the press appearing in his video footage and in the police body camera footage, who wore bright neon vests with the word "PRESS" printed thereon. (Id. at pp. 3, 8, videos and photos).

With regard to Sheriff's Officers from Monmouth County, as well as the officers from the Borough of Belmar, who interacted with Plaintiff after his arrest, the MCPO noted in its Investigative Report that whether Plaintiff identified himself as press to those officers is of no moment because these officers from Monmouth County and the Borough of Belmar "were unaware of the specific circumstances that led to [Plaintiff's] arrest." (Compl., Exh. D, p. 7). The MCPO further concluded that "While the city issued Emergency Proclamation exempted credentialed press from the curfew, it did not create a similar exemption for other laws such as the failure to disburse [sic]. . . . Nor is there a blanket prohibition on the arrest of a reporter." (Compl., Exh. D, p. 8 (internal citation and footnote omitted)).

Plaintiff's Complaint includes six (6) causes of action, with the first five (5) aimed at Lieutenant Bercovicz and other fictitious defendants representing the police officers who allegedly assaulted and arrested Plaintiff. The remaining Sixth Cause of Action is the only one that asserts claims against Monmouth County as one of three "Municipal Defendants"[3].  This count alleges that the "Municipal Defendants" failed to properly train and supervise the fictitious defendant officers in handling credentialed journalists at the protest, and particularly Plaintiff, in violation of 42 U.S.C. § 1983 and N.J.S.A. 10:6-2. (Compl., ¶¶ 73-82). Plaintiff opines and speculates

> [T]here is no doubt that the arrest of a reporter who was not violating any law at a protest will frequently deprive that reporter of his or her rights under the United States Constitution and the Constitution of the state of New Jersey. It is obvious that officers would need to know how to address journalists covering major events like protests. The failure to train and supervise officers and employees on how to treat reporters in light of the obvious need to do so is reflective of Municipal Defendants' unconstitutional custom and policy of deliberate indifference to Mr. Martinez's and journalists' safety, well-being, and constitutional rights. It is highly likely that

---

[3] Although Monmouth County is not a "municipality" pursuant to New Jersey definitions under N.J.S.A. 40A:12-2(d) and (e), the County may be included under the umbrella of "municipality" for the purposes of § 1983 liability analysis according to Supreme Court precedent. See generally McMillian v. Monroe County, Ala., 520 U.S. 781 (1997) and Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397 (1997) (each discussing a county as either an agent of the State or as a municipality for purposes of § 1983 liability, making no distinction for county as a distinct public entity).

> Defendants will continue to violate journalists'
> constitutional rights without adequate training and
> supervision.

[(Compl. ¶ 81).]

In his allegations and cause of action against Monmouth County, Plaintiff fails to meet the pleading requirements of Fed. R. Civ. P. 8, and as such Monmouth County must be dismissed from this matter pursuant to Fed. R. Civ. P. 12(b)(6). Moreover, even assuming arguendo that the Court finds that Plaintiff has sufficiently met the pleading requirements of the Court Rules, Plaintiff's cause of action against Monmouth County still fails to state a claim upon which relief can be granted as a matter of law.

## STANDARD OF REVIEW

For a complaint to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). In Twombly and its progeny, the United States Supreme Court established a three-step inquiry to determine if the pleading standard was sufficient to survive a 12(b)(6) motion. See Bistrian v. Levi, 696 F.3d 352, 356 (3d Cir. 2012) (interpreting the Twombly/Iqbal inquiry).

8

First, the court must "outline the elements a plaintiff must plead to state a claim for relief." Id. Second, the court "must peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Third, the court must "look for well-pled factual allegations, assuming their veracity, and then determine whether they plausibly give rise to an entitlement to relief." Id. This final step in the analysis is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (internal citations and quotations omitted).

Pursuant to the Twombly/Iqbal progeny, a plaintiff must plead sufficient factual and specific conduct as to each individual defendant, not paint all defendants with a broad brush, lumping them together for alleged conduct. Ranko v. Saudino, 15-8483 (ES), 2016 WL 1529835, at *2 (D.N.J. Apr. 15, 2016). "The complaint must allege sufficient factual matter to show that the claim is facially plausible" as to the specific defendant accused. Fowler v. UPMS Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (internal citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

9

Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting Iqbal, supra, 556 U.S. at 678).

Here, Plaintiff's Complaint falls woefully short of pleading specific facts and conduct that would allow the Court to draw a reasonable inference that Defendant Monmouth County is liable for some wrong committed against Plaintiff. Indeed, assuming arguendo their veracity, the only specific facts alleged with regard to the behavior of Monmouth County employees, here the Sheriff's Officers on the night of Plaintiff's arrest, demonstrate that the County's employees were acting in accordance with State statutory duties and obligations. As such, Plaintiff's Complaint must be dismissed as to Defendant Monmouth County pursuant to Fed. R. Civ. P. 12(b)(6), and as further argued herein.

## LEGAL ARGUMENT

### POINT I

**PLAINTIFF'S COMPLAINT FAILS TO MEET THE PLEADING REQUIREMENTS OF FED. R. CIV. P. 8 WITH REGARD TO DEFENDANT MONMOUTH COUNTY, AND THEREFORE MUST BE DISMISSED AS TO MONMOUTH COUNTY PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**A.   Plaintiff's Complaint Lumps All of the Defendants Together and Does Not Specify What Monmouth County is Alleged to Have Done Wrong.**

In a statement of factual allegations spanning eighteen (18) pages, Plaintiff summarizes the entirety of his interactions with Defendant Monmouth County in one-and-one-half

(1½) paragraphs. Thereafter, in the only count of the Complaint seeking relief against Monmouth County, the Sixth Cause of Action ("Count Six"), Plaintiff asserts generalized claims against the three Municipal Defendants - Asbury Park, Belmar and Monmouth County - for failure to train and supervise without in any way distinguishing the differing roles of the various Municipal Defendants.

The operative allegations of Count Six allege that:

76.   The Municipal Defendants' training policies were inadequate to train their officers and employees to carry out their duties at protests where credentialed journalists were expected to be in attendance or at the police stations where arrestees would be held.

77. The Municipal Defendants failed to supervise their officers and employees in carrying out their duties at protests where credentialed journalists were expected to be in attendance or at the police stations where arrestees would be held.

[(See Compl., ¶¶ 76-77.)]

By pleading in this fashion and lumping all of the so-called Municipal Defendants together, Plaintiff has failed under Fed. R. Civ. P. 8 to put Defendant Monmouth County on notice of its alleged wrongdoing. This failure requires the dismissal of the Complaint. Galicki v. New Jersey, 2015 WL 3970297 *5-6 (D.N.J. June 29, 2015).[4]

---

[4] While normally a dismissal based upon the failure to place a defendant on notice would be without prejudice, for the reasons that follow in Points II and III infra, any amendment would be futile as a matter of law. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434

11

Under the current Complaint, Monmouth County does not know if Plaintiff is alleging it had a responsibility to train or supervise Asbury Park and/or Belmar police officers or if the allegations are limited solely to the Monmouth County Sheriff's Officers who placed Plaintiff in a Sheriff's Office van and transported him to the Belmar police station. Even assuming it is only for the latter, Plaintiff does not assert any conduct by Monmouth County Sheriff's Officers that would demonstrate a lack of training and supervision. Indeed, as noted in Point III, infra, accepting arrestees from municipal police departments is part of a Sheriff's Office's legal obligations, and thus, as a matter of law, the Monmouth County Sheriff's Officers acted appropriately. See N.J.S.A. 30:8-1; see also Point III.

Accordingly, Plaintiff's Complaint is deficient and must be dismissed.

**B.   Plaintiff's Complaint Fails to Provide Notice to Monmouth County as to What Wrongdoing it Engaged In.**

Although Fed. R. Civ. P. 8 requires a "simple, concise, and direct" recitation of the alleged facts giving rise to a claim; in Twombly and Iqbal, supra, the Supreme Court reexamined the standards necessary for a complaint to meet the notice requirements likewise codified in Rule 8. Taken as a whole and assuming arguendo the veracity of the facts asserted therein,

---

(3d Cir. 1997). Accordingly, the Complaint should be dismissed with prejudice as to Monmouth County.

Plaintiff's Complaint fails to meet the notice requirement in Fed. R. Civ. P. 8 with regard to his claim against Monmouth County. As such, the County's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) must be granted.

In _Iqbal_ the Court stated, "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. at 678.

In explaining its holding in _Twombly_, the Court in _Iqbal_ held that a court in examining the sufficiency of a pleading on a motion to dismiss was to be guided by two principles.

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [Twombly, 550 U.S.] at 555 [] (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556 []. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. [] But where the well-pleaded facts do not permit the court to infer

13

> more than the mere possibility of misconduct, the
> complaint has alleged—but it has not "show[n]" "that
> the pleader is entitled to relief." Fed. Rule Civ.
> Proc. 8(a)(2).

[Iqbal, supra, 556 U.S. at 678-79 (some internal citations omitted)(emphasis added).]

In the present matter, the sole count of the Complaint addressing conduct of Monmouth County employees claims that Monmouth County failed to train and failed to supervise its officers with regard to interactions with members of the press reporting on protests, yet the factual assertions within the Complaint contain no assertions of misconduct by these employees, the Sheriff's Officers.

According to the Supreme Court:

> To survive a motion to dismiss, a complaint must
> contain sufficient factual matter, accepted as true,
> to "state a claim to relief that is plausible on its
> face". . . . A claim has facial plausibility when the
> plaintiff pleads factual content that allows the court
> to draw the reasonable inference that the defendant is
> liable for the misconduct alleged.

Iqbal, supra, 556 U.S. at 678.

Thus, when reviewing the sufficiency of a Complaint under a Twombly/Iqbal analysis the court must first look to determine which allegations of the Complaint are not entitled to the "assumption of truth." Id. at 680.

In the present matter, Plaintiff's Count Six against Monmouth County – that it failed to supervise and train its

employee Sheriff's Officers - is distinctly not entitled to the assumption of truth because there is not a single factual allegation to support it. Plaintiff broadly states that the Monmouth County Sheriff's Officers have not been trained in the First Amendment and in handling media at protests, yet alleges no facts to support this claim. Monmouth County is left wondering, what is the misconduct that leads Plaintiff to this conclusion that it failed to train and supervise these officers?

Assuming for purposes of argument only the truth of Plaintiff's factual account of his interactions with Monmouth County Sheriff's Officers stated in paragraphs 26 and 27 of his Complaint, Plaintiff has established only three things: (1) he was purportedly assaulted and had already been arrested by the Asbury Park Police prior to interaction with the Sheriff's Officers; (2) a Sheriff's Officer noticed and asked about his press badges; and (3) one or more Sheriff's Officers placed Plaintiff in a van and transported him to a Belmar police station. Not one of these facts represents any misconduct by the Sheriff's Officers that any training or supervision could have precluded.

Indeed, the Sheriff's Officers acted in conformity with their lawful purpose: they received an arrestee and transported him to a place of detention. See N.J.S.A. 30:8-1. That a Sheriff's Officer asked Plaintiff a question does not give rise

15

to misconduct nor detract from the fact that an Asbury Park police officer having jurisdiction in the area had already arrested and placed Plaintiff in police custody. Without notice of what exactly that or any other Sheriff's Officer's alleged misconduct is, Plaintiff fails to satisfy the first inquiry under Twombly/Iqbal and sufficiently plead a cause of action.

The next step in this Court's analysis is to examine any factual allegations of Plaintiff's Complaint "to determine if they plausibly suggest an entitlement to relief." Id. Once again the facts of Plaintiff's Complaint that specifically recount the actions of the Monmouth County Sheriff's Officers create no plausible basis for relief. Plaintiff does not claim he was abused or assaulted when received by the Sheriff's Officers and transported to Belmar, and it appears his only basis for the belief that the Sheriff's Officers were not trained in the First Amendment is that one such officer asked Plaintiff an unspecified question about the press badges he wore.

In this regard, it is clear that a law enforcement officer asking a question is not a basis for liability under § 1983 or New Jersey law. Otherwise every officer of the law would be in jeopardy when speaking with an arrestee no matter the context, because the officer's words could be subjectively interpreted as proof of an unconstitutional arrest. The Supreme Court has rejected the subjective interpretation of law officers' speech

16

for the exact reason that "doubtful retaliatory arrest suits [could] proceed based solely on allegations" stemming from an officer's speech. See Nieves v. Bartlett, ___ U.S. ___, 139 S. Ct. 1715, 1725 (2019).

> As a result, policing certain events like an unruly protest would pose overwhelming litigation risks. Any inartful turn of phrase or perceived slight during a legitimate arrest could land an officer in years of litigation. [Plaintiff's] standard would thus "dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." [] It would also compromise evenhanded application of the law by making the constitutionality of an arrest vary from place to place and from time to time depending on the personal motives of individual officers. [] Yet another predictable consequence of such a rule is that officers would simply minimize their communication during arrests to avoid having their words scrutinized for hints of improper motive — a result that would leave everyone worse off. [].

[Id. (quoting Gregoire v. Biddle, 177 F. 2d 579, 581 (C.A.2 1949) (Learned Hand, C.J.)) (internal quotations and citations omitted) (emphasis added).]

Plaintiff's Complaint here seems to interpret notice of some cause of action from the factual assertion that a Sheriff's Officer "noticed [Plaintiff's] press badges and inquired about them." (Compl., ¶ 26). This court, however, per the guidance in Bartlett, must avoid scrutinizing the Sheriff's Officer's alleged inquiry, and any subsequent action or inaction, where there is no objective basis beyond the inquiry itself to establish a fundament of a plausible cause of action from same.

The inquiry itself and the context in which it was made, <u>after</u> Plaintiff's arrest by an officer from the municipality having jurisdiction over the protest and aftermath, in no way implicate a plausible cause of action against Monmouth County for failure to train or supervise.

Moreover, Plaintiff's status as a member of the press did not provide him with blanket immunity from arrest such that the Sheriff's Officer would have immediate cause to recognize a violation of Plaintiff's protected rights. Indeed, in <u>State v. Lashinsky</u>, the New Jersey Supreme Court held that a press photographer could be "convicted as a disorderly person for his refusal to heed a police officer's order to move back from the immediate vicinity of a gory, fatal automobile accident." 81 N.J. 1, 5-6 (1979). Notably, the press photographer initially showed his press credentials to the officer in an attempt to rebuff the order to move from the scene, to which the officer responded "I don't care at this point," and again instructed him to leave, ultimately arresting him. <u>Id.</u> at 7. Under the court's analysis, that the officer verbalized that he did not "care" in that moment about the photographer's press credentials was not dispositive because the photographer had disobeyed a reasonable order that was issued to "protect[] a vital State interest, securing the safety of persons involved in an emergency mishap

by protecting a police officer from unjustifiable interference in the performance of his duties." Id. at 18.

Thus, press credentials do not act as impenetrable force fields nor get-out-of-jail free cards – "constitutional prerogatives of the press must yield, under appropriate circumstances, to other important and legitimate government interests." Id. at 13.

In the present matter, Plaintiff's status as a reporter did not and could not signify to the Monmouth County Sheriff's Officers that he was wrongfully arrested, immune from arrest, or otherwise. Moreover, these Sheriff's Officers had no statutory or legal authority to question the basis of Plaintiff's arrest since they were not the arresting authority and had not witnessed the events leading to same.

It is therefore respectfully submitted that when analyzed in accordance with the Supreme Court's holdings in Twombly and Iqbal, the allegations in Plaintiff's Complaint have not "nudged [his] claims . . . across the line from conceivable to plausible," Iqbal, 556 U.S. at 680, and do not meet the pleading requirements of Fed. R. Civ. P. 8. Accordingly, Plaintiff's Complaint must be dismissed as to Monmouth County for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

<u>POINT II</u>

**EVEN IF THE COURT FINDS PLAINTIFF'S COMPLAINT SUFFICIENT UNDER FED. R. CIV. P. 8, PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983 FAIL TO STATE A CLAIM**

To bring a successful claim under 42 U.S.C. § 1983 against a municipality, a plaintiff must plead and then prove that a municipal agent's conduct was part of an established policy and procedure that caused a constitutional deprivation. <u>Monell v. New York City Dept. of Soc. Services</u>, 436 U.S. 658 (1978). It is not sufficient for a plaintiff to allege that a training program for a class of employees "represents a policy" for which the municipality is responsible. <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 389 (1989). Rather, the inadequacy of police training and supervision may serve as a basis for municipal liability under <u>Monell</u> only where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." <u>Id.</u> at 390.

As articulated in <u>Harris</u>, liability against a municipality for failure to train is contingent upon "the identified deficiency in a [] training program [ ] be[ing] closely related to the ultimate injury." <u>Id.</u> at 391. In other words, the deficient training must be proved to have "<u>actually caused the</u>

<u>police officers' indifference</u>" to the constitutional right. <u>Id.</u> (emphasis added).

> To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city could have done to prevent the unfortunate incident. Thus, permitting cases against cities for their "failure to train" employees to go forward under § 1983 on a lesser standard of fault would result in <u>de facto respondeat superior</u> liability on municipalities — a result we rejected in <u>Monell</u> []. It would also engage the federal courts in an endless exercise of second guessing municipal employee-training programs.

[<u>Id.</u> at 391-92 (internal citations omitted).]

As such, Plaintiff in the present matter must plead facts sufficient to establish that Monmouth County's alleged failure to train/supervise the Sheriff's Officers with whom Plaintiff interacted on June 1, 2020, actually <u>caused</u> the alleged deprivation of his constitutional rights. Plaintiff's Complaint fails to meet this standard of fault and causation, nor <u>can</u> it because, as alleged in the Complaint, Plaintiff was already under arrest when turned over to the Monmouth County Sheriff's Officers. As set forth in Point III, <u>infra</u>, given those facts, the Monmouth County Sheriff's Officers were required under New Jersey law to receive and transport Plaintiff.

Furthermore, according to Count Six, Monmouth County's "failure to train and supervise officers and employees on how to

treat reporters in light of the obvious need to do so is reflective of Municipal Defendants' unconstitutional custom and policy of deliberate indifference to Mr. Martinez's and journalists' safety, well-being, and constitutional rights." (Compl., ¶ 81). In other words, Plaintiff wants the Court to assume the effect "reflect[s]" the cause, i.e., because he was allegedly deprived of his rights there must have been a failure to train as to those rights. To accept this premise as sufficient to plead a cause of action would be directly contrary to Monell and Harris and would essentially create a cause of action for de facto respondeat superior liability. This cannot be the case per the decisions of the highest Court.

It is, instead, Plaintiff's burden in his pleading to present at least some facts sufficient to show that the alleged lack of training by Monmouth County was the actual cause of his purported constitutional injury. Harris, supra, 489 U.S. at 393 (O'Connor, J. concurring). He fails to meet this burden. Indeed, he fails to allege any facts to demonstrate that a Monmouth County Sheriff's Officer played a role in any alleged constitutional deprivation Plaintiff may have endured. Again, the facts asserted by Plaintiff, taken to be true for the purposes of this motion, show that a Sheriff's Officer received Plaintiff into custody after he was already arrested and detained by an Asbury Park officer. There is no allegation of

22

misconduct by the Sheriff's Officer, but only a claim that he inquired about Plaintiff's press credentials prior to transporting him to a nearby police station in Belmar. As addressed more fully under Point III herein, that was the only lawful action the involved Sheriff's Officer could have taken notwithstanding any inquiry about Plaintiff's purposes at the protest.

Thus, not only has Plaintiff failed to allege any facts showing a Monmouth County Sheriff's Officer's misconduct, but also has failed to allege any facts connecting Plaintiff's alleged unconstitutional treatment with actions by the Sheriff's Officers. Plaintiff's Complaint is devoid of any reference to any official policy, procedure or custom regarding interactions and arrests of reporters and members of the press in Monmouth County that were violations of constitutional protections, nor indeed any misconduct of a Sheriff's Officer occurring on the night in question.

In short, no causal connection whatsoever has been made between the alleged violation of Plaintiff's constitutional rights and training programs for the Monmouth County Sheriff's Officers such that "deliberate indifference" to constitutional rights of the press can be even remotely discerned.

For these reasons, Plaintiff's § 1983 claim as to Monmouth County must be dismissed as he fails to state a claim upon which relief can be granted.

<u>POINT III</u>

<u>PLAINTIFF FAILS TO STATE A CAUSE OF ACTION UPON WHICH RELIEF CAN BE GRANTED UNDER STATE LAW BECAUSE THE MONMOUTH COUNTY SHERIFF'S OFFICERS ACTED SPECIFICALLY IN ACCORDANCE WITH STATE LAW GOVERNING THEIR CONDUCT</u>

The jurisdiction and conduct of Sheriff's Officers is dictated by the New Jersey Constitution and statutory authority. Under the section of state law governing county and municipal penal institutions, the actions of Sheriff's Officers who receive arrestees are specifically proscribed.

> <u>Sheriffs</u> and jailers <u>shall receive from</u> constables or <u>other officers all persons apprehended by such</u> constables or <u>officers for offenses against this state.</u> A sheriff or jailer refusing to receive any such offenders shall be guilty of a misdemeanor and on conviction shall be fined at the discretion of the court.

[N.J.S.A. 30:8-1 (emphasis added).]

There is long-standing case law interpreting this statute's constraints on a Sheriff's Officer's decision-making when receiving an arrestee that remains unrefuted and binding. In <u>State v. Kelly</u>, the Hudson County Sheriff was presented with a man arrested based on a warrant of arrest. 84 N.J.L. 1, 2 (1913). When the arresting officer presented him for confinement pending a hearing, the sheriff released him on the basis of his

24

belief that the warrant was not sufficient to hold him in the jail. <u>Id.</u> at 2-3. The sheriff was found guilty of a misdemeanor under the fifteenth section of what was then called the Sheriff's Act and what is now codified as N.J.S.A. 30:8-1. <u>Id.</u> at 5.

In its opinion on the sheriff's appeal, the court addressed, amongst other things, the circumstances under which an arresting officer would transfer an arrestee into the custody of a Sheriff's Officer.

> A peace officer is authorized and required to arrest <u>without a warrant</u> one who has committed a felony or other serious criminal offense in his presence, and to keep him safe until a hearing may be had before a magistrate. It would be strange indeed if the law imposed this duty upon him, and yet afforded him no place in which to have his prisoner temporarily confined until such hearing could be secured. The contrary is the fact. <u>Where the hearing cannot be had at once, the arresting officer has a right, if it be requisite to do so for the safekeeping of the prisoner, to place them in the county prison, or other place of temporary confinement, until such hearing can be arranged for.</u> The [Sheriff's Act] is a legislative recognition of this right, and <u>gives the sheriff, or other keeper of the common jail of the county, no option when the officer produces his prisoner</u> at the door of the jail, but compels him to receive the prisoner into his custody, and provides a penalty for his refusal to do so. And this obligation on the part of the sheriff exists in every case where the arrest has been legally made, whether with or without a warrant.

[<u>Id.</u> at 4-5 (emphasis added).]

Acknowledging that there can be questionable circumstances in arrests, the opinion also includes that any "irregularity" in the arrest can be taken advantage of by the person arrested "and not third parties" - the third party being the sheriff in that case. Id. at 3.

In Gibson v. Inacio, 2010 WL 3943684 (D.N.J. October 5, 2010) the court recognized the validity of the long standing principles annunciated in Kelly, dismissing a § 1983 claim against the Union County Jail, i.e., Union County. In that matter, the plaintiff asserted she was wrongfully arrested and transferred to the Union County Jail for failure to pay parking tickets that had been dismissed. In dismissing the plaintiff's claims against Union County, Judge Wigenton, relying on N.J.S.A. 30:8-1, held that Union County did not violate Plaintiff's constitutional rights by jailing her after she was lawfully arrested. Id. at *12. Thus, Union County and its employees were immune from suit, and dismissed from the case, because "they were performing their statutorily mandated duties." Id.

Similarly, in State v. Hughes, the court in finding that the Monmouth County Sheriff did not have the inherent authority to defer a prisoner's incarceration, noted the statutory obligation of N.J.S.A. 30:8-1, which imposed upon the sheriff the obligation to "receive from constables or other officers all

persons apprehended by such constables or officers for offenses against this state." 230 N.J. Super. 223, 229 (App. Div. 1989).

In Plaintiff's Complaint, he asserts three facts depicting the actions of the Monmouth County Sheriff's Officers on June 1, 2020: one or more Sheriff's Officer received Plaintiff after he was arrested, asked Plaintiff a question related to his press badges, and transported him to the police station in Belmar where he was temporarily confined. The receipt and transport of an arrestee is part and parcel of the Sheriff's Officers' statutory duties, duties which they are statutorily prohibited from not performing. Whether any Sheriff's Officer asked if Plaintiff was a reporter, or knew or had reason to know he was a reporter, is of no moment under a reading of N.J.S.A. 30:8-1, because that statute prohibits the Sheriff's Officer from refusing to receive an arrestee.

The fact that Plaintiff was a reporter does not provide him with blanket immunity from arrest, Lashinsky, supra, 81 N.J. 1, and even if his arrest were "irregular" or uncommon under the circumstances, the Monmouth County Sheriff's Officers had no statutory or legal authority to release him due to any arm's-length perception of irregularity. Indeed, even if the Sheriff's Officers were not statutorily prohibited from releasing Plaintiff, to do so based on press credentials alone would have been reckless as they were not the arresting authority and had

27

<u>no</u> <u>knowledge</u> of the reason for his arrest. <u>See</u> Point I(B), <u>supra</u>.

In short, the Monmouth County Sheriff's Officers who interacted with Plaintiff on June 1, 2020, did not have the legal authority to refuse acceptance of Plaintiff into their custody once Plaintiff had been arrested by Asbury Park police. Assuming arguendo that Plaintiff expressed to a Sheriff's Officer that he was a member of the press to insinuate that he had been arrested in violation of his constitutional rights, the long-standing authority in <u>State v. Kelly</u> makes clear that the Sheriff's Officers were prohibited from releasing him whether or not there was a real or perceived "irregularity" in the arrest.

Thus, Plaintiff's claim against Monmouth County due to the actions of the Sheriff's Officers has no basis in law and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

CONCLUSION

For the foregoing reasons, Defendant Monmouth County's motion dismiss should be granted and the Plaintiff's Complaint should be dismissed as to Monmouth County, with prejudice.

GLUCKWALRATH LLP
Attorneys for Defendant
Monmouth County

By: /s/ Fay L. Szakal

By: /s/ Robyn B. Gigl

Dated:    August 19, 2020

29