DASTI, MURPHY, McGUCKIN, ULAKY,
KOUTSOURIS & CONNORS
PATRICK F. VARGA, ESQ. [ID No. 306502020]
620 West Lacey Road
Post Office Box 1057
Forked River, New Jersey 08731
(609) 971-1010  FAX (609) 971-7093
Attorneys for **Defendants, Borough of Belmar**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GUSTAVO MARTINEZ<br><br>Plaintiff(s),<br><br>vs.<br><br>CITY OF ASBURY PARK, MONMOUTH COUNTY, BOROUGH OF BELMAR, AMIR BERCOVICZ, DEWITT BACON, DANIEL SAVASTANO, WILLIAM WHITLEY and JOHN DOE OFFICERS 1-14,<br><br>Defendant. | Civil Action no. 3:20-cv-8710 -AET-DEA |

**Brief in Support of Defendant, Borough of Belmar's Motion to Dismiss**

Of Counsel:
Thomas E. Monahan, Esquire
On Brief:
Patrick F. Varga, Esquire

DASTI, MURPHY
McGUCKIN, ULAKY,
KOUTSOURIS & CONNORS

COUNSELLORS AT LAW

620 WEST LACEY ROAD
P.O. BOX 1057
FORKED RIVER, N.J. 08731

1

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................i

TABLE OF AUTHORITIES..............................................................ii

STATEMENT OF UNDISPUTED FACTS......................................................1

LEGAL ARGUMENT.....................................................................5

POINT ONE

    DEFENDANT BOROUGH OF BELMAR'S MOTION
    FOR JUDGMENT ON THE PLEADINGS IS BROUGHT
    PURSUANT TO FED R. CIV. PRO. 12(c)..........................................5

POINT TWO

    PLAINTIFF IS INCAPABLE OF SUBSTANTIATING
    A CAUSE OF ACTION AGAINST THE BOROUGH OF BELMAR..............................7

CONLUSION.........................................................................14

DASTI, MURPHY
McGUCKIN, ULAKY,
KOUTSOURIS & CONNORS

COUNSELLORS AT LAW

620 WEST LACEY ROAD
P.O. BOX 1057
FORKED RIVER, N.J. 08731

# TABLE OF AUTHORITIES

## CASES

A.M. v. Luzerne Cty. Juv. Det. Ctr.,
    32 F.3d 572 (3rd cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6

Bernsstein v. State,
    411 N.J Super 316 (App. Div. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Bielevicz v. Dubinson,
    915 F.2d 845 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

C.H.Z.H. v. Olivia,
    226 3d 198 (3rd Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Conner v. Reinhard,
    847 F.2d 384 (7th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fletcher v. O'Donnell,
    867 F.2d 791 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Garcia v. County of Bucks, PA,
    155 F. Supp 2d 259 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

Gittlemacker v. Prasse,
    428 F.3d 1 (3d Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Brizinova, 592 B.R. 442
    (Bankr. E.D.N.Y. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Kelly v. County of Monmouth,
    380 N.J. Super. 552 (App. Div. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Leang v. Jersey City Bd. of Educ.,
    198 N.J. 557 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

McDonough v. Jorda,
    214 N.J. Super 338 (App. Div. 1986),

DASTI, MURPHY
McGUCKIN, ULAKY,
KOUTSOURIS & CONNORS

COUNSELLORS AT LAW

620 WEST LACEY ROAD
P.O. BOX 1057
FORKED RIVER, N.J. 08731

cert. den. 110 N.J. 302 (1988)..................................................8

Monell v. Dept of Soc. Services of the City of New York,
    436 U.S. 658 (1978)........................................................8, 10

O'Connor v. harms et al.,
    111 N.J. Super 22 (App. Div. 1970)
    cert. den. 57 N.J. 137 (1970)..............................................7

Parkel v. Vanberg,
    833 F.3d 313 (3rd Cir. 2016)..............................................12

Reitz v. County of Bucks,
    125 F.3d 139 (3d Cir. 1997)...............................................13

Santiago v. Warminster Township,
    629 F.3d 121 (3rd Cir. 2010)..............................................9

Shuman v. Raritan Twp.,
    CV143658FLWLHG, 2016 WL 7013465
    (D.N.J. Nov. 30, 2016).....................................................11

Sikirica v. Nationwide Ins. Co.,
    416 F.3d 214 (3d Cir. 2005)...............................................5

Soc'y Hill Civic Ass'n v. Harris,
    632 F.2d 1045 (3d Cir. 1980).............................................5

Stoneking v Bradford Area School District,
    720 (3rd Cir. 1989).........................................................11

Thigpen v. City of East Orange,
    408 N.J. Super 331 (App. Div. 2009)................................8

Ward v. Barnes,
    545 F. Supp. 2d 400 (D.N.J. 2008)...................................8

**FEDERAL STATUTES**

42 U.S.C. §1983...................................................7, 8, 9, 10, 11, 13

**STATE STATUTES**

N.J.S.A. 59:2-10....................................................................7

DASTI, MURPHY
McGUCKIN, ULAKY,
KOUTSOURIS & CONNORS

COUNSELLORS AT LAW

620 WEST LACEY ROAD
P.O. BOX 1057
FORKED RIVER, N.J. 08731

## COURT RULES

Fed. R. Civ. Pro. 12(b)(6)................................................5
Fed. R. Civ. Pro. 12(c)...................................................5

DASTI, MURPHY
McGUCKIN, ULAKY,
KOUTSOURIS & CONNORS

COUNSELLORS AT LAW

620 WEST LACEY ROAD
P.O. BOX 1057
FORKED RIVER, N.J. 08731

## STATEMENT OF UNDISPUTED FACTS

1. On September 8, 2020 Gustavo Martinez ("Plaintiff") filed his Amended Complaint alleging various cause of actions against the City of Asbury Park ("Asbury Park"), Monmouth County, Borough of Belmar ("the Borough" or "Belmar"), Amir Bercovicz, Dewitt Bacon, Daniel Savastano, William Whitley emanating from his arrest which occurred on June 1, 2020. (See attached hereto as **Exhibit A** Plaintiff's First Amended Complaint).

2. On June 1, 2020 the complaint alleges that the Plaintiff was attending the Black Lives Matter Protest in Asbury Park as a member of the media. Prior to the events leading up to Plaintiff's arrest, Asbury Park issued a Proclamation of State of Emergency enacting a temporary curfew beginning at 8:00 p.m. for all persons within its jurisdiction, however, the proclamation exempted *inter alia* "credential members of the media. (See **Exhibit A ¶¶** 2-3, and Exhibit A attached thereto).

3. After the curfew went into effect, at approximately 10:00 p.m. members of only the Asbury Park Police Department approached the plaintiff in an effort to disperse other unruly persons and arrested the plaintiff while he was actively filming the protest. (**Exhibit A ¶¶** 3-4, 29, 30).

4. Plaintiff alleges that the officers thereafter approached him, and he was unlawfully arrested, assaulted by Asbury Park Police Officers, detained and deprived the Plaintiff of his civil and constitutional rights as a member of the press (**Exhibit A**).

DASTI, MURPHY
McGUCKIN, ULAKY,
KOUTSOURIS & CONNORS

COUNSELLORS AT LAW

620 WEST LACEY ROAD
P.O. BOX 1057
FORKED RIVER, N.J. 08731

5. In fact Plaintiff acknowledges, that "he observed officers during the course of his arrest that, upon information and belief, he believed were employed at a minimum by Asbury Park and Monmouth County." (**Exhibit A** ¶30).

6. Significantly, Plaintiff has no basis to claim that any Belmar officer was present at the time of his arrest simply because they were not there. (See **Exhibit B** Certification of Chief Tina Scott).

7. After Plaintiff was arrested, he does not assert a member of Belmar transported him to the Belmar Police Department, rather, he only points the proverbial finger at Monmouth County and asserts it was individuals employed by Monmouth County who transported him to Belmar where he was processed. (**Exhibit A** ¶¶ 33-34).

8. Plaintiff only begins to acknowledge his interaction with Belmar Police Officers when he was finally located within the Belmar Police Department itself, and was advised by these officers "that he was being held for the Asbury Park Police. They also did not have… any information about the charges pending against him." (**Exhibit A** ¶ 35).

9. Again, no member of the Belmar Police Department were present during Plaintiff's arrest, and were incapable of inquiring with the arresting officer as Plaintiff was transported to the Belmar Police Department by a member of the Monmouth County Sheriff's Department. (**Exhibit B**).

10. Thereafter, Plaintiff again confirms and terminates any inference which may have concluded that a Belmar Police Officer partook in his arrest, when he acknowledges "around 12:30 a.m. an Asbury Park Police Officer arrived and took Mr. Martinez into a separate room…. The officer notified Mr. Martinez that the police were going to process

DASTI, MURPHY
McGUCKIN, ULAKY,
KOUTSOURIS & CONNORS

COUNSELLORS AT LAW

620 WEST LACEY ROAD
P.O. BOX 1057
FORKED RIVER, N.J. 08731

him and release him soon and stated that he would receive a misdemeanor ticket." **(Exhibit A ¶ 36)**.

11. After the officer completed his report, Plaintiff was released from the Belmar Police Station and was handed a summons and complaint on his way out of the door, significantly this summons and complaint was not issued by any member of the Belmar Police Department but was issued by a member of the Asbury Park Police. **(Exhibit A ¶ 37)**.

12. As a result of the aforementioned facts, Plaintiff's lone cause of action against the Borough of Belmar is it violated his civil and constitutional rights in violations of §1983 and in support of this allegation, the only substantiating fact he asserts is that after he was arrested by an Asbury Park Police officer, and transported to the Belmar Police Department by officers employed by Monmouth County, he informed a Belmar Police Officer that he was a member of the press, and magically the Belmar Officer should have than immediately released him based off that lone statement. (Exhibit A ¶¶ 52, 83-96).

DASTI, MURPHY
McGUCKIN, ULAKY,
KOUTSOURIS & CONNORS

COUNSELLORS AT LAW

620 WEST LACEY ROAD
P.O. BOX 1057
FORKED RIVER, N.J. 08731

# LEGAL ARGUMENT

## POINT ONE

### DEFENDANT BOROUGH OF BELMAR'S MOTIONT TO DISMISS IS BROUGHT PURSUANT TO FED. R. CIV. PRO. 12(c)

Defendant Borough of Belmar moves to dismiss pursuant to Fed. R. Civ. Pro. 12(c). Rule 12(c) permits a party to move for judgment after "the pleadings are closed but within such time as not to delay the trial." Fed. R. Civ. Pro. 12(c). The movant under this rule bears the onus to clearly establish that "no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 219 (3d Cir. 2005). Motions pursuant to Rule 12(c) are treated as Motions brought pursuant to Fed. R. Civ. Pro. 12(b)(6) and will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law. Soc'y Hill Civic Ass'n v. Harris, 632 F.2d 1045, 1054 (3d Cir. 1980). "In considering a motion for judgment on the pleadings, the trial court is required to view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Id. The only distinction between a motion to dismiss for failure to state a claim and a motion for judgment on the pleadings is one of timing; if the motion is filed before the answer, the court may treat it as a motion to dismiss for failure to state a claim, conversely, a motion to dismiss filed after the pleadings close will be treated as a motion for judgment on the pleadings. See In re Brizinova, 592 B.R. 442 (Bankr. E.D.N.Y. 2018).

To survive a motion to dismiss for failure to state a claim, a complaint must "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

DASTI, MURPHY
McGUCKIN, ULAKY,
KOUTSOURIS & CONNORS

COUNSELLORS AT LAW

620 WEST LACEY ROAD
P.O. BOX 1057
FORKED RIVER, N.J. 08731

5

(2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A complaint need not make detailed factual allegations to survive a Rule 12(c) motion for judgment on the pleadings[.]" Twombly, supra, at 555. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Iqbal, supra, at 679. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id.

As the United States Supreme Court in Iqbal succinctly analyzed, there are two threshold inquiries that a Court must engage in when reviewing a motion to dismiss brought pursuant to Fed. R. Civ. Pr. 12(b)(6). First, the court must naturally accept as true all the allegations contained in the complaint, while noting that simply reciting the elements of the cause of action, supported by mere conclusory statements will not suffice to overcome a competent motion. Iqbal, supra, at 679. As "a plaintiff armed with nothing more than conclusions" will not unlock the doors of discovery. Id. The second inquiry mandates that the Plaintiff state a plausible claim of relief, which is a context-specific task which "requires the reviewing court to draw on its judicial experience and common sense." Id. However, where the pleaded facts, even if they are accepted as true do not permit the court to infer more than the mere possibility of misconduct, then the Plaintiff is not entitled to relief. Id.

Here, as will be detailed below Plaintiff's complaint does not assert a scintilla of evidence that the Borough of Belmar infringed upon Plaintiff's constitutional rights in violation of §1983 on June 1, 2020.

DASTI, MURPHY
McGUCKIN, ULAKY,
KOUTSOURIS & CONNORS

COUNSELLORS AT LAW

620 WEST LACEY ROAD
P.O. BOX 1057
FORKED RIVER, N.J. 08731

## POINT TWO

### PLAINTIFF IS INCAPABLE OF SUBSTANTIATING A CAUSE OF ACTION AGAINST THE BOROUGH OF BELMAR.

Most of the controlling law mandating this matter be dismissed has been briefed by Codefendant Monmouth County, and Codefendant Asbury Park which the Borough of Belmar hereby incorporates and relies upon as if more fully stated herein. Here, the Borough in addition to the analysis submitted by the Codefendants Monmouth County, and Asbury Park submits the following with respect to Plaintiff's asserted cause of action pursuant to 42 U.S.C §1983.

N.J.S.A. 59:2-10 provides, "A public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J.S.A. 59:2-10. This provision recognizes the existing law and public policy that a public entity should not be vicariously liable for such conduct of its employees. In addition it adopts the concept noted in O'Connor v. harms et al., 111 N.J. Super 22, 27-28 (App. Div. 1970) cert. den. 57 N.J. 137 (1970) that:

> A public corporation such as a city or other public body, by reason of its being an artificial legal entity created by law to perform limited governmental functions, cannot entertain malice, as a public corporation.

Id.

Multiple decisions of our Appellate Division and the New Jersey Supreme Court have recognized that the aforementioned section of the New Jersey Tort Claims Act insulates public entities from any liability for the torts of its employees constituting a crime (such as assault and battery) or willful misconduct (such as deliberate indifference by first responders to someone's medical needs. See Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 582, 586-587 (2009); Bernsstein v. State, 411 N.J Super 316, 332 (App. Div. 2010); Thigpen v. City of East Orange,

DASTI, MURPHY
McGUCKIN, ULAKY,
KOUTSOURIS & CONNORS

COUNSELLORS AT LAW

620 WEST LACEY ROAD
P.O. BOX 1057
FORKED RIVER, N.J. 08731

408 N.J. Super 331, 344 (App. Div. 2009); Kelly v. County of Monmouth, 380 N.J. Super. 552, 558 (App. Div. 2005). Very specifically, our Appellate division has held that where a police officer commits an assault, such misconduct is willful, and the officer's public entity employer cannot be held vicariously liable, even under a theory of negligent training. McDonough v. Jorda, 214 N.J. Super 338, 349-50 (App. Div. 1986), cert. den. 110 N.J. 302 (1988). Similarly, the District Court has recognized that under that statute a public entity cannot be held vicariously liable for any employee's battery, or intentional infliction of emotional distress. Ward v. Barnes, 545 F. Supp. 2d 400, 420-21 (D.N.J. 2008).

Moreover, it is a well-established principle that a municipality cannot be held liable under §1983 based on a theory of respondeat superior; however, a municipality can be sued directly under § 1983 if the action that caused a constitutional tort was based on a municipal custom or policy. Monell v. Dept of Soc. Services of the City of New York, 436 U.S. 658, (1978). A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when an execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government entity as an entity responsible under §1983. Monell, U.S. at 694.

With respect to the supervisory liability allegations, an individual supervisor such as a police chief may be personally liable if he or she participated in violating he plaintiff's rights, directed others to violate them, or as the person in charge and had knowledge of an acquiesce in his subordinate's violations. A.M. v. Luzerne Cty. Juv. Det. Ctr., 32 F.3d 572, 576 (3rd cir. 2004). Such liability requires a showing of proximate causation so a plaintiff must demonstrate a plausible nexus or affirmative link between the directions and the specific depravation of

DASTI, MURPHY
McGUCKIN, ULAKY,
KOUTSOURIS & CONNORS

COUNSELLORS AT LAW

620 WEST LACEY ROAD
P.O. BOX 1057
FORKED RIVER, N.J. 08731

constitutional rights and issues." Santiago v. Warminster Township, 629 F.3d 121, 130 (3rd Cir. 2010). Knowledge in a "failure to supervise must consist of either contemporaneous knowledge of the offending incident or knowledge of a pattern or similar incidences." C.H.Z.H. v. Olivia, 226 3d 198, 202 (3rd Cir. 2000). Here, even if discovery is permitted to ensue, it will not reveal a "plausible nexus" or an "affirmative link" between the directions and plaintiff's claim that he was deprived of his First Amendment rights. The only fact which discovery will establish is that the Borough of Belmar offered to assist Asbury Park and permit its department to utilize the Borough's holding cells.

Likewise, to state a claim of supervisory liability under § 1983, plaintiff must prove that the alleged tortfeasor was "directed to violate" the plaintiff's constitutional rights by a superior." Santiago supra at 130. Such can potentially be demonstrated by showing that the "supervisor gave directions, that the supervisor knew, or should reasonably have known what caused others to deprive the plaintiff of [his/her] constitutional rights." id. Conner v. Reinhard, 847 F.2d 384, 397 (7th Cir. 1988). Critically, "any claim that supervisors directed others to violate constitutional rights necessarily includes as an element an actual violation at the hands of subordinates." Here, discovery will not disclose that any member of the Borough of Belmar were directed to arrest the Plaintiff in violation of constitutional rights as it is incontrovertible that Plaintiff's arrest, transportation, and ultimately the issuance of summonses was not handled by a member of the Borough of Belmar's police department.

To prove a deficiency in supervision, "the plaintiff must show that a reasonable municipal policy maker had contemporaneous knowledge of the offending occurrence or knowledge of a pattern or prior incidents or similar violations of constitutional rights and failed to take adequate measures to ensure the particular right in question or otherwise communicated

DASTI, MURPHY McGUCKIN, ULAKY, KOUTSOURIS & CONNORS

COUNSELLORS AT LAW

620 WEST LACEY ROAD
P.O. BOX 1057
FORKED RIVER, N.J. 08731

9

a message of approval to the offending subordinates. Garcia v. County of Bucks, PA, 155 F. Supp 2d 259, 268 (E.D. Pa. 2001). Here, it is impossible for Chief Scott to have "contemporaneous knowledge of the offending occurrence" because Chief Scott was not actually working at the time that the occurrence took place. In fact, it is indisputable that Chief Scott was not present at the Police Department the night of the alleged incident.

Furthermore, the burden falls on the plaintiff to produce evidence of a specific policy or custom established by the entity or its officials that violated the plaintiff's constitutional rights. See Gittlemacker v. Prasse, 428 F.3d 1, 3, (3d Cir. 1970) ("a §1983 civil rights complaint must portray specific conduct by state officials which violates some constitutional right of the complainant in order to state a claim for relief"). A "policy" is made when a "statement, ordinance, regulation, or decision" is "officially adopted and promulgated by that body's officers." Monell supra, at 690. Here, discovery will not reveal the existence of a policy actionable through §1983. Significantly, Plaintiff does not assert that such a policy exists within the Borough for the simple fact that there is no policy within the Borough that instructs officer's to arrest reporters for doing their job.

A custom is "a given course of conduct, although not specifically endorsed or authorized by law…so well-settled and permanent as virtually to constitute law." Bielevicz v. Dubinson, 915 F.2d 845, 850 (3d Cir. 1990). Policy or custom cannot be inferred from a single isolated municipal act. See Fletcher v. O'Donnell, 867 F.2d 791, 793 (3d Cir. 1989)("a single incident by a lower level employee acting under color of law, however, does not suffice to establish either an official policy or custom), cert denied, 492 U.S. 919 (1980). Only when the custom can be established by other means such as "proof of knowledge and acquiescence" will a single incident of custom be sufficient to establish it was done pursuant to official policy. Id.

DASTI, MURPHY
McGUCKIN, ULAKY,
KOUTSOURIS & CONNORS

COUNSELLORS AT LAW

620 WEST LACEY ROAD
P.O. BOX 1057
FORKED RIVER, N.J. 08731

Here, Plaintiff cannot tangentially substantiate "proof of knowledge of acquiescence," to establish the Borough was even peripherally aware that Plaintiff's arrest was allegedly performed in violation of his Constitutional rights. In fact, it is indisputable that no Borough agent participated in the Plaintiff's arrest, and at most the Borough's relationship with Plaintiff was transient at best. To assert a cause of action pursuant to §1983 for the Borough's conduct in offering its holding cells is simply not supported by any law or legal precedent. Plaintiff's only supporting fact within his complaint to this point, is that a Borough Officer was informed he was a member of the press by the Plaintiff. However, even Plaintiff himself does not attest that he attempted to explain his situation to the Borough Officer and admittedly only advised the officer that he was a member of the press. To now contend that the Borough had some custom or policy which encouraged its officers to deprive the journalist of his constitutional rights simply because they did not release him right then and there is a folly.

Additionally discovery will reveal no evidence that Chief Scott was deliberately indifferent to the consequences and established policies and customs of the Borough of Belmar's Police Department. See, Shuman v. Raritan Twp., CV143658FLWLHG, 2016 WL 7013465, at *24 (D.N.J. Nov. 30, 2016)) citing Stoneking v Bradford Area School District, 720, 725 (3rd Cir. 1989). Nor do the Plaintiff assert that she was.

Moreover, there can be no supervisory liability, unless there was some affirmative act on Chief Scott's part such as implementing or maintenance of a policy, practice, or custom that caused the constitutional harm. See Parkel v. Vanberg, 833 F.3d 313, 330 (3rd Cir. 2016). Under this theory, Chief Scott has no liability as a matter of law. There exists no policy in Belmar which could support this cause of action.

DASTI, MURPHY
McGUCKIN, ULAKY,
KOUTSOURIS & CONNORS

COUNSELLORS AT LAW

620 WEST LACEY ROAD
P.O. BOX 1057
FORKED RIVER, N.J. 08731

11

In fact, there are no corroborating facts supporting the imposition of liability on the Borough of Belmar. It is indisputable that the Borough never supported a custom or policy violative of the Plaintiff's constitutional rights. It is indisputable, that the Borough never acquiesced in the violation of Plaintiff's constitutional rights. It is indisputable that Plaintiff cannot present a single fact from the date of his arrest to refute this conclusion. Moreover, the only fact that Plaintiff can assert against the Borough is that they were the third and last party whom he advised he was a member of the press, and it is indisputable that any member of the Borough Police Department who he came in contact with was not present at the time of his arrest.

Furthermore, there are no facts which support the allegation that Chief Scott knew or should have known that the events of June 1, 2020 were about to take place. In fact, Plaintiff himself acknowledges that there was a directive in Asbury which specifically permitted the Plaintiff's conduct. Plaitniff cannot have his cake and eat it too, by simultaneously alleging the Borough of Belmar condoned his arrest while acknowledging the directive which permitted his conduct.

Discovery will reveal no set of facts which could support the allegations against the Borough, that they had any deficiency regarding the discipline of other officers for respecting the a journalist's first amendment rights, which somehow permitted the events of June 1, 2020.

There are no facts supporting the allegation that the Borough's alleged deficiencies in failing to instruct, supervise, train, control, and discipline the aforementioned officers somehow caused the events of June 1, 2020, as the Plaintiff was not arrested by a Borough officer.

Simply put there is no fact asserted by the Plaintiff which could substantiate a <u>Monell</u> claim, specifically in so far as it is alleged that the Borough created and encouraged an

DASTI, MURPHY
McGUCKIN, ULAKY,
KOUTSOURIS & CONNORS

COUNSELLORS AT LAW

620 WEST LACEY ROAD
P.O. BOX 1057
FORKED RIVER, N.J. 08731

atmosphere of condonation of police misconduct which proximately caused the deprivation of Plaintiff's First Amendment Rights on June 1, 2020 for the reasons stated *supra*. Which to reiterate, in order to establish municipal liability for such constitutional violations, plaintiff must prove (1) a custom or policy of inadequate training, supervision, or hiring; (2) the municipality's deliberate indifference to that inadequacy; and (3) a causal nexus between inadequacy and the constitutional deprivation. Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997). None of these legal prongs can be satisfied by the Plaintiff herein.

For there to be any municipal liability, the plaintiff must show "deliberate indifference in adopting a custom or policy that caused a constitutional violation." To advance this allegation, plaintiff "must demonstrate the municipality's deliberate conduct was the moving force behind the alleged injury." Reitz, supra 145. Here, Plaintiff bears an insurmountable burden of establishing any conduct on behalf of the Borough of Belmar was the moving force behind his arrest, as he himself acknowledges that no member of the Borough of Belmar participated in arresting him. The only conduct performed by the Borough of Belmar was that its officers were told by the Plaintiff, and only by the Plaintiff that he was a member of the press. Clearly this is insufficient as a matter of a law to substantiate a §1983 claim.

Moreover, "[a] need for training or other corrective action to avoid eminent deprivation of a constitutional right must also be so apparent that any reasonable policy maker or supervisor would have taken appropriate preventative measures." Garcia supra at 268. It is indisputable that such facts are not present in this matter. The only basis for Plaintiff's entire complaint against the Borough is the fact that they offered a neighboring municipality the use of their holding cells to assist it in the event Asbury Park's holding cells reached capacity.

Clearly, dismissal is warranted with respect to all claims against the Borough of Belmar.

DASTI, MURPHY
McGUCKIN, ULAKY,
KOUTSOURIS & CONNORS

COUNSELLORS AT LAW

620 WEST LACEY ROAD
P.O. BOX 1057
FORKED RIVER, N.J. 08731

## CONCLUSION

Although the Borough is sympathetic to Mr. Martinez's complaint, he fails to assert a cause of action that is sustainable against the Borough of Belmar. Therefore, for the aforementioned reasons, the Borough respectfully requests that this Honorable Court dismiss Plaintiff's Complaint with prejudice.

Respectfully Submitted,

**DASTI, MURPHY, McGUCKIN, ULAKY, KOUTSOURIS & CONNORS**
*Attorneys for Belmar*

Dated: October 13, 2020  BY: _____
PATRICK F. VARGA, ESQUIRE

DASTI, MURPHY
McGUCKIN, ULAKY,
KOUTSOURIS & CONNORS

COUNSELLORS AT LAW

620 WEST LACEY ROAD
P.O. BOX 1057
FORKED RIVER, N.J. 08731

14