NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GUSTAVO MARTÍNEZ,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF ASBURY PARK *et al.*,<br><br>　　　　　　Defendants. | Civ. No. 20-8710<br><br>**OPINION** |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion for Judgment on the Pleadings filed by Defendant Borough of Belmar ("Belmar") (ECF No. 27), the Motion to Partially Dismiss the Amended Complaint filed by Defendant County of Monmouth ("Monmouth") (ECF No. 33), the Motion to Dismiss Defendant Belmar's Counterclaim filed by Plaintiff Gustavo Martínez ("Plaintiff") (ECF No. 34), and the Motion to Partially Dismiss the Amended Complaint filed by Defendants City of Asbury Park ("Asbury Park") and Officers Dewitt Bacon, Amir Bercovicz, Daniel Savastano, and William Whitley (collectively, the "Asbury Park Defendants") (ECF No. 35). The Court has decided the Motions based on the written submissions of the parties and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Defendant Belmar's Motion for Judgment on the Pleadings (ECF No. 27) is denied, Defendant Monmouth's Motion to Partially Dismiss (ECF No. 33) is denied, Plaintiff's Motion to Dismiss Defendant Belmar's Counterclaim (ECF No. 34) is moot, and the Asbury Park Defendants' Motion to Partially Dismiss (ECF No. 35) is granted in part and denied in part.

## BACKGROUND

I.     **Factual Background**

This case arises out of the arrest of a journalist covering a Black Lives Matter protest. In connection with protests of police misconduct following the death of George Floyd, an unarmed Black man, the Mayor of Asbury Park and the Asbury Park Emergency Coordinator promulgated a Proclamation of State of Emergency (the "Emergency Proclamation") on June 1, 2020. (Am. Compl. ¶ 22, ECF No. 16.) The Emergency Proclamation set a citywide 8:00 P.M. curfew, but exempted credentialed members of the media from the curfew. (*Id.*)

At all relevant times, Plaintiff was a multimedia journalist for the *Asbury Park Press*. (*Id.* ¶ 12.) Plaintiff was assigned to report on a Black Lives Matter protest in Asbury Park the night of June 1, 2020. (*Id.* ¶ 22.) Before Plaintiff arrived at the protest, the *Asbury Park Press* contacted local law enforcement to confirm they understood that reporters were exempt from the curfew. (*Id.*)

Plaintiff arrived at the protest around 7:00 P.M. with his press badges displayed around his neck. (*Id.* ¶ 24.) One of Plaintiff's press badges had been issued by the New Jersey State Police through the New Jersey Police Press Credential Program; the other was from the *Asbury Park Press*. (*Id.* ¶ 23.) Plaintiff wore a yellow bandana, reflective armbands, protective eyewear, and a helmet. (*Id.*)

Plaintiff recorded videos of the protest with his cell phone. (*Id.* ¶ 24.) Just before 10:00 P.M., police officers began ordering protestors to leave the area. (*Id.* ¶ 25.) Plaintiff witnessed police officers "spraying an irritant and chasing people, cursing and yelling at them to leave the area." (*Id.* ¶ 27.) Plaintiff heard screaming nearby and turned to see officers "acting violently toward two teenagers." (*Id.* ¶ 28.) As officers "advanc[ed] toward [Plaintiff] to move him away

from the incident with the teenagers[,] [h]e began retreating, walking backwards, while still trying to film the altercation." (*Id.*)

Plaintiff heard a police officer swear at him and exclaim, "He's the problem!" (*Id.* ¶¶ 4, 29.) Officer Whitley, an Asbury Park officer, allegedly tackled Plaintiff. (*Id.* ¶ 29.) Plaintiff's phone was "slapped out of [his] hand" and he was arrested. (*Id.*) While on the ground, Plaintiff identified himself as a reporter. (*Id.*) Officer Savastano, another Asbury Park officer, "assisted Officer Whitley in handcuffing [Plaintiff]." (*Id.*) Asbury Park Officers Bacon and Bercovicz "observed the arrest, but did not intervene." (*Id.*) Other officers "whose employers are . . . unknown, but are suspected to be Asbury Park, Belmar, and/or the Monmouth County Sheriff's Office, were passing nearby, but failed to intervene." (*Id.* ¶ 30.)

Another officer brought Plaintiff to a van marked "Monmouth County Sheriff." (*Id.* ¶ 33.) A group of officers wearing jackets labeled "Sheriff" surrounded the van. (*Id.*) One of the officers asked Plaintiff about his press badges. (*Id.*) Plaintiff identified himself as a reporter. (*Id.*) A Monmouth County officer loaded Plaintiff into the van. (*Id.*)

Monmouth County officers drove Plaintiff to the Belmar police station. (*Id.* ¶ 34.) While processing Plaintiff, a Belmar police officer asked Plaintiff whether he was a reporter. (*Id.*) Plaintiff confirmed that he was. (*Id.*) The officer took Plaintiff's press badges, placed them with the rest of Plaintiff's belongings, and escorted Plaintiff to a cell. (*Id.*) While Plaintiff was in the cell, another police officer asked him whether he was a reporter. (*Id.* ¶ 35.) He responded affirmatively. (*Id.*)

After midnight, an Asbury Park police officer arrived at the police station and brought Plaintiff into a separate room. (*Id.* ¶ 36.) Plaintiff informed the officer that he was a reporter. (*Id.*) The officer notified Plaintiff that he would be ticketed for disorderly conduct. (*Id.*)

3

Around 3:30 A.M., Plaintiff was released from the Belmar police station. (*Id.* ¶ 37.) He was issued a summons and complaint. (*Id.*) Officer Bercovicz, the certifying officer, stated that Plaintiff "fail[ed] to obey an order to disperse." (*Id.*) Around 12:30 P.M. on June 2, 2020, Plaintiff learned from an *Asbury Park Press* employee that the charges against him had been dropped. (*Id.* ¶ 38.)

## II.     Procedural History

On September 8, 2020, Plaintiff filed the operative Amended Complaint. (ECF No. 16.) In addition to the named Defendants, Plaintiff sues John Doe Defendants, characterized as "individual law enforcement officers employed by one or more of [Defendants Asbury Park, Monmouth, and Belmar] or other law enforcement agencies who were involved in [Plaintiff's] arrest and detention." (Am. Compl. ¶ 20.) Plaintiff alleges six counts:

- (1) violations of the First Amendment to the U.S. Constitution and Article I, Paragraphs 6 and 18 of the New Jersey Constitution, based on alleged infringements of free speech, free press, and the right to record, against Officer Savastano, Officer Whitley, and the John Doe Defendants (Am. Compl. ¶¶ 55–62);

- (2) violations of the First Amendment to the U.S. Constitution and Article I, Paragraphs 6 and 18 of the New Jersey Constitution, based on alleged retaliation, against Officer Savastano, Officer Whitley, and the John Doe Defendants (Am. Compl. ¶¶ 63–68);

- (3) violations of the Fourth Amendment to the U.S. Constitution and Article I, Paragraph 7 of the New Jersey Constitution, based on unlawful arrest and false imprisonment, against Officer Savastano, Officer Whitley, and the John Doe Defendants (Am. Compl. ¶¶ 69–73);

- (4) violations of the Fourth Amendment to the U.S. Constitution and Article I, Paragraph

> 7 of the New Jersey Constitution, based on excessive force, against Officer Savastano and Officer Whitley (Am. Compl. ¶¶ 74–78);
>
> - (5) failure to intervene against Officer Bercovicz, Officer Bacon, and the John Doe Defendants (*id.* ¶¶ 79–82); and
>
> - (6) failure to train and failure to supervise against Defendants Asbury Park, Monmouth, and Belmar (the "Municipality Defendants") (*id.* ¶¶ 83–96).

Plaintiff brings his claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-2. (Am. Compl. at 23, 25–26, 28–30.)

Plaintiff also submits two video recordings: (i) Plaintiff's video footage of the events leading up to his arrest, (*see* Pl.'s Ex. B, ECF No. 16-2), and (ii) video footage from the body-worn camera of one of the officers involved in Plaintiff's arrest, (*see* Pl.'s Ex. E, ECF No. 16-5). Neither video appears to identify individual officers clearly.

Plaintiff seeks declaratory relief, compensatory and punitive damages, and attorneys' fees and costs. (Am. Compl. at 33–34.) He also seeks an injunction preventing Defendants "from restricting or prohibiting [Plaintiff] or any other persons from engaging in protected free speech or free press activity, including but not limited to recording police activity in public spaces in Asbury Park, except when such activities are prohibited by valid law or local ordinance." (*Id.* at 33.)

Alongside its Answer, Defendant Belmar filed a Counterclaim against Plaintiff. (ECF No. 20.) Defendant Belmar filed a Motion for Judgment on the Pleadings. (ECF No. 27.) Defendant Monmouth filed a Motion to Partially Dismiss the Amended Complaint. (ECF No. 33.) The Asbury Park Defendants also filed a Motion to Partially Dismiss the Amended Complaint. (ECF No. 35.)

Plaintiff filed a Motion to Dismiss Defendant Belmar's Counterclaim. (ECF No. 34.) Defendant Belmar advised the Court that it does not oppose Plaintiff's Motion to Dismiss. (ECF No. 36.) Defendant Belmar's Amended Answer does not include counterclaims against Plaintiff. (*See generally* Def. Belmar's Am. Answer, ECF No. 40.)

Plaintiff opposed Defendant Belmar's Motion for Judgment on the Pleadings, Defendant Monmouth's Motion to Partially Dismiss, and the Asbury Park Defendants' Motion to Partially Dismiss. (ECF No. 42.) The moving Defendants filed Replies. (ECF Nos. 46, 47, 48.) The Motion for Judgment on the Pleadings, Motion to Dismiss the Counterclaim, and Motions to Partially Dismiss the Amended Complaint are presently before the Court.

## **LEGAL STANDARDS**

### I. **Motion to Dismiss**

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 556 U.S. at 675). "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Third, 'whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement [to] relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). A complaint that does not demonstrate more than a

"mere possibility of misconduct" must be dismissed. *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

**II.      Motion for Judgment on the Pleadings**

"A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017). "Judgment will not be granted unless the movant 'clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law.'" *Bedoya v. Am. Eagle Express Inc.*, 914 F.3d 812, 816 n.2 (3d Cir. 2019) (quoting *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005)).

## DISCUSSION

**I.      Injunctive Relief**

As a preliminary matter, the Asbury Park Defendants submit that Plaintiff does not have standing to seek injunctive relief. (Asbury Park Defs.' Br. at 7–10, ECF No. 35-1.) Prospective injunctive relief "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Plaintiff's employment as a journalist at the *Asbury Park Press*, in addition to his failure-to-train and failure-to-supervise claims against the Municipality Defendants, *see infra* Section III, suggest that similar future harms against Plaintiff are at least plausible. Without the benefit of discovery on this issue, dismissing Plaintiff's request for injunctive relief at this point would be premature.

**II.     Officer Defendants**

Apart from their argument that Plaintiff cannot seek injunctive relief, the Asbury Park Defendants do not seek to dismiss Counts 1–3. Nor do they seek to dismiss Count 4 as to Officer

7

Whitley. The Court proceeds to evaluate the excessive force claim against Officer Savastano and the failure-to-intervene claim against Officers Bercovicz and Bacon.

    A.    *Officer Savastano*

Plaintiff has not stated a claim that Officer Savastano used excessive force in violation of the Fourth Amendment. The Court's focus is on the alleged excessive force, not on Plaintiff's distinct claims of unlawful arrest and false imprisonment. *See County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1547 (2017) ("*The* framework for analyzing excessive force claims is set out in *Graham* [*v. Connor*, 490 U.S. 386 (1989)]. If there is no excessive force claim under *Graham*, there is no excessive force claim at all. To the extent that a plaintiff has other Fourth Amendment claims, they should be analyzed separately."). Excessive force claims are "analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham*, 490 U.S. at 395. "The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

Plaintiff alleges that Officer Savastano "assisted Defendant Whitley in handcuffing [Plaintiff]" while "[t]he John Doe Defendants and [Officers] Savastano and Whitley held [Plaintiff] down on the ground." (Am. Compl. ¶¶ 29, 76.) It is unclear what Plaintiff means by "assisted" in handcuffing. But assuming that Officer Savastano handcuffed Plaintiff, there is no indication that he did so in an unreasonable manner. *See Gilles v. Davis*, 427 F.3d 197, 208 (3d Cir. 2005) (concluding that the plaintiff did not demonstrate excessive force where the plaintiff complained about the tightness of his handcuffs, but showed no signs of discomfort and did not seek medical treatment after the fact); *cf. Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004) (concluding that the plaintiff stated a claim of excessive force where the officer allegedly placed

8

excessively tight handcuffs on the plaintiff, the officer did not respond to requests to loosen the handcuffs, the handcuffs caused the plaintiff severe pain, and the plaintiff suffered permanent nerve damage to his wrist). Therefore, Plaintiff's Fourth Amendment excessive force claim against Officer Savastano is dismissed.

Plaintiff's excessive force claim against Officer Savastano under Article I, Paragraph 7 of the New Jersey Constitution is also dismissed. The parties have not briefed the Court on whether Article I, Paragraph 7 of the New Jersey Constitution is coextensive with the Fourth Amendment with respect to excessive force. The Court, however, sees no reason to apply two different standards. *See State v. Ravotto*, 777 A.2d 301, 316 (N.J. 2001) (finding unreasonable force under Article I, Paragraph 7 of the New Jersey Constitution "for the reasons previously expressed" in the court's analysis of unreasonable force under the Fourth Amendment); *Norcross v. Town of Hammonton*, 2008 WL 9027248, at *4–5 (D.N.J. Feb. 5, 2008) (applying the Fourth Amendment's objective reasonableness standard to the plaintiff's excessive force claim under the New Jersey Constitution).

B.  *Officers Bercovicz and Bacon*

Plaintiff provides an adequate factual basis for his failure-to-intervene claim against Officers Bercovicz and Bacon. "'[A] police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force,' but only 'if there is a realistic and reasonable opportunity to intervene.'" *El v. City of Pittsburgh*, 975 F.3d 327, 335 (3d Cir. 2020) (quoting *Smith v. Mensinger*, 293 F.3d 641, 650–51 (3d Cir. 2002)). Plaintiff avers that Officers Bercovicz and Bacon "observed the arrest, but did not intervene." (Am. Compl. ¶ 29.) Discovery will further inform the extent and nature of their opportunity to intervene. It will also test the viability of Plaintiff's underlying constitutional claims against the other officers. At this juncture,

however, Plaintiff's failure-to-intervene claim is sufficiently pleaded.

### III. Municipality Defendants

"A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*." *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). "[A] § 1983 claim against a municipality may proceed in two ways. A plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citations and internal quotation marks omitted).[1] This case proceeds in the second way: Plaintiff claims that the Municipality Defendants failed to train and supervise their employees. (Am. Compl. ¶¶ 83–96.)

Municipal liability for failure to train or supervise under § 1983 "requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).[2] "A plaintiff sufficiently pleads deliberate indifference by showing that '(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.'" *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d

---

[1] "This district has repeatedly interpreted NJCRA analogously to § 1983." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011).
[2] Courts consider failure-to-train and failure-to-supervise claims "together because they fall under the same species of municipal liability." *Est. of Roman v. City of Newark*, 914 F.3d 789, 799 n.7 (3d Cir. 2019).

10

Cir. 2019) (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011)).

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)). "Nevertheless, . . . in certain situations, the need for training 'can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights' even without a pattern of constitutional violations." *Thomas*, 749 F.3d at 223 (quoting *Harris*, 489 U.S. at 390 n.10). "Single-incident" liability arises "in a narrow range of circumstances." *Connick*, 563 U.S. at 63 (quoting *Bryan Cnty.*, 520 U.S. at 409). "Liability in single-incident cases depends on '[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'" *Thomas*, 749 F.3d at 223–24 (quoting *Bryan Cnty.*, 520 U.S. at 409).

A plaintiff must separately demonstrate causation to sustain a failure-to-train claim. *Id.* at 222. To satisfy the causation requirement, "the identified deficiency in [the] training program must be closely related to the ultimate injury." *Harris*, 489 U.S. at 391.

Plaintiff has not alleged a pattern of similar constitutional violations by employees of the Municipality Defendants. Rather, Plaintiff's allegations are based on a single incident: his arrest and detention by the Municipality Defendants' officers on June 1–2, 2020. (*See* Opp'n at 10–11, ECF No. 42.)

At this stage of the case, Plaintiff adequately states a failure-to-train and failure-to-supervise claim against the Municipality Defendants. First, Plaintiff has averred facts plausibly suggesting the Municipality Defendants knew that their officers would "confront a particular situation"—namely, journalists or reporters covering a protest. *See Roman*, 914 F.3d at 798. The

New Jersey Police Press Credential Program in which Plaintiff participated "ensures that law enforcement in New Jersey can identify journalists and tailor their interactions with them." (Am. Compl. ¶ 93.) Other journalists were ostensibly unlawfully arrested at protests around the country in summer 2020. (*See id.* ¶ 1.) Asbury Park's Emergency Proclamation exempted "credentialed members of the media" from its curfew. (*Id.* ¶ 22.) And the *Asbury Park Press* purportedly contacted local law enforcement to confirm that they were aware of the exemption. (*Id.*)

Second, the particular situation plausibly involves a difficult task—namely, how to identify and interact with reporters during and after a protest. *See Roman*, 914 F.3d at 798. A "difficult choice" can arise where "more than the application of common sense is required." *See Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992). Police officers must honor their duty to ensure public safety. At the same time, officers must honor the public's right to record police activity under the First Amendment. Officers must also heed exemptions to general rules, including curfew exemptions for members of the press. The existence of the New Jersey Police Press Credential Program suggests that fulfilling those obligations calls for more than common sense.

Third, it is plausible that failures to navigate interactions with reporters properly could "frequently cause deprivation of constitutional rights." *See Roman*, 914 F.3d at 798. At least where recording does not interfere with police activity, "under the First Amendment's right of access to information the public has the commensurate right to record—photograph, film, or audio record—police officers conducting official police activity in public areas." *Fields v. City of Philadelphia*, 862 F.3d 353, 360 (3d Cir. 2017). A warrantless arrest not based on probable cause violates the Fourth Amendment to the U.S. Constitution. *District of Columbia v. Wesby*, 138 S.

Ct. 577, 585–86 (2018) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)). And excessive force during an arrest violates the Fourth Amendment. *See Graham*, 490 U.S. at 395.

Plaintiff need not provide details about the Municipality Defendants' specific training programs or protocols at this stage of the case. *See Carter*, 181 F.3d at 358 (explaining that the plaintiff "cannot be expected to know, without discovery, exactly what training policies were in place or how they were adopted"). Under the Third Circuit's three-pronged test for deliberate indifference, the allegations in the Complaint are sufficient at the motion-to-dismiss stage to state a failure-to-train and failure-to-supervise claim against the Municipality Defendants.

### IV.   Defendant Belmar's Counterclaim

Defendant Belmar does not bring counterclaims against Plaintiff alongside its Amended Answer. (*See generally* Def. Belmar's Am. Answer.) Therefore, Plaintiff's Motion to Dismiss Defendant Belmar's Counterclaim (ECF No. 34) is moot.

### V.   Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure allows amendment of the pleadings with the court's leave, which should be given freely "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[Third Circuit] precedent supports the notion that in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). The Court grants Plaintiff leave to amend the Amended Complaint to cure the pleading deficiencies identified in this Opinion. If Plaintiff wishes to do so, he may amend the Amended Complaint within fourteen days.

**CONCLUSION**

For the foregoing reasons, Defendant Belmar's Motion for Judgment on the Pleadings (ECF No. 27) is denied, Defendant Monmouth's Motion to Partially Dismiss the Amended Complaint (ECF No. 33) is denied, Plaintiff's Motion to Dismiss Defendant Belmar's Counterclaim (ECF No. 34) is moot, and the Asbury Park Defendants' Motion to Partially Dismiss the Amended Complaint (ECF No. 35) is granted in part and denied in part. An appropriate Order will follow.


Date: March 5, 2021                                /s/ Anne E. Thompson
                                                   ANNE E. THOMPSON, U.S.D.J.